UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN MOORE, II, NAZEM SAAD,
KENNETH MATLOCK, and
CLIFTON WINES,

         *Plaintiffs,*

*v.*

HEIDI WASHINGTON, MARK
KING, ADRIAN DIRSCHELL,
NOAH NAGY, KATHLEEN
MEYERS, McGINN, MOSES, and
TIMOTHY RYDER,

         *Defendants.*

_____/

Case No. 23-cv-11506

Judith E. Levy
United States District Judge

Patricia T. Morris
United States Magistrate Judge

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION (ECF No. 24)**

I.    **RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Plaintiffs'

Preliminary Injunction (ECF No. 24) be **DENIED WITHOUT PREJUDICE**.

II.    **REPORT**

    **A. Introduction**

Plaintiffs John Moore, II, Nazem Saad, Kenneth Matlock, and Clifton Wines

("Plaintiffs") filed this prisoner civil rights action against several defendants alleging

a failure to provide medical accommodations during the month of Ramadan in the

1

year 2023.  (ECF No. 1).   In advance of the upcoming holy month, Plaintiff moved

for a preliminary injunction on December 19, 2023 that would direct Defendants to

provide Plaintiffs with medical accommodations during Ramadan.  (ECF No. 24).

### B. Background

Plaintiffs are prisoners in the custody of Michigan Department of Corrections

("MDOC"), incarcerated at the Parnall Correctional Facility ("SMT").  (ECF No.

24, PageID.233).    Around late February 2023, Plaintiffs began requesting

accommodations to receive their medication before sunrise and/or after sunset so

they could fast during the daylight hours for Ramadan.  (*Id.* at PageID.234 (citing

ECF No. 1, PageID.39)).  Plaintiff Moore was assured that accommodations would

be provided as long as he signed up as participating in Ramadan.  (*Id.*).  However,

in late March Plaintiff Moore advised Defendants LaFave, Moses, and Meyers that

medical accommodations were not being provided, and prisoners observing

Ramadan were being issued misconducts instead.    (*Id.* (citing ECF No. 1,

PageID.50)).  He also informed them of the central importance of fasting during

Ramadan.  (*Id.*).  Defendants contend that if prisoners observing Ramadan were in

fact not receiving their medication during the requested times, it was due to high

staff turnover.  (ECF No. 27, PageID.382; ECF No. 27-5, PageID.414–15 ¶ 29–32).

Plaintiff Moore then submitted another medical kite informing SMT medical

personnel that he was not being accommodated, and provided a prayer schedule

along with instructions on when medication should be administered during Ramadan. (*Id.* at PageID.234–35 (citing ECF No. 1, PageID.47–48)).

Plaintiffs allege Defendants "engaged in a deliberate process of retaliation against Muslims who were not taking their medications during Ramadan" and instead opted to issue misconduct tickets. (*Id.* at PageID.235 (citing ECF No. 1, PageID.28–32)). However, misconducts for missing medline stopped once Ramadan concluded. (*Id.* (citing ECF No. 1, PageID.6, ¶40)).

Plaintiffs filed the instant motion asking the Court to grant them a preliminary injunction, and require Defendants provide Plaintiffs their requested accommodations to receive their medication before sunrise and/or after sunset. (*Id.* at PageID.244). The Defendants argue that Plaintiffs' motion should be denied as Plaintiffs lack standing and they cannot satisfy the necessary preliminary injunction factors. (ECF No. 27, PageID.370–71).

**C. Legal Standard**

The moving party carries the burden of proving that he or she is entitled to a preliminary injunction. *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009). Because preliminary injunctive relief is an "extraordinary remedy," courts hesitate to grant preliminary injunctive relief and will only do so if an injunction is "clearly" warranted. *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). Moreover, given the "unique nature of a prison setting," where a

prisoner moves to enjoin "prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting." *Sango v. Wakley*, No. 1:14-cv-703, 2014 WL 3894652, at *2 (W.D. Mich. Aug. 8, 2014) (citing *Glover v. Johnson*, 855 F.2d 277, 284 (6th Cir. 1988)).

When considering whether to issue a preliminary injunction or a TRO, a court must consider four factors: (1) the movant's likelihood of success on the merits, (2) whether the movant "is likely to suffer irreparable harm in the absence of preliminary relief," (3) whether "the balance of equities tips in" the movant's "favor," and (4) whether the "injunction is in the public interest." *Winter v. Nat. Res. Def. Comm'n*, 555 U.S. 7, 20 (2008).

No one factor is controlling, and except for the movant's risk of irreparable injury, no single factor is required to obtain injunctive relief. *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 102–03 (6th Cir. 1982) (citing *Sampson v. Murray*, 415 U.S. 61, 88 (1974)). Instead, these factors must be "carefully balanced" by the district court. *Frisch's Rest., Inc. v. Shoney's Inc.*, 759 F.2d 1261 1263 (6th Cir. 1985). Further, although a movant with "no likelihood of success on the merits" generally cannot obtain injunctive relief, a movant need not show an "overwhelming" probability of success on the merits. *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. Aug. 22, 2000); *Sellers v. U. of Rio Grande*, 838 F. Supp. 2d 677, 679 (S.D. Ohio 2012). The proof required to obtain a

preliminary injunction is "much more stringent than the proof required to survive a summary judgment motion." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000).

### D. Analysis

Plaintiffs argue that Defendants did not have a legitimate penological interest in refusing to grant the requested accommodations. (ECF No. 24, PageID.236–37). Further, they argue that Defendants' refusal to accommodate them constituted a substantial burden on their religious exercise per the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), and Defendants cannot demonstrate that refusing to accommodate Plaintiffs' medication requirements during Ramadan is the least restrictive means. (*Id.* at PageID.234–35, 238–39).

Defendants counter that Plaintiffs cannot establish a strong likelihood of success on the merits of their RLUIPA claim as Plaintiffs lack standing because their claims are unripe. (ECF No. 27, PageID.380). Further, because Plaintiffs' alleged injuries concern future events, unlikely to occur, they are unripe. (*Id.* at PageID.382–83).

The Undersigned finds that Plaintiffs do not have standing as (i) Plaintiff Saad and Matlock are no longer housed at SMT, and (ii) Plaintiffs Moore and Wines alleged injuries for the upcoming holy month are speculative. Even if Plaintiffs Moore and Wines were found to have standing, their request for injunctive relief should be denied as they have failed to satisfy the irreparable harm element as their

claimed injuries are neither certain nor immediate.  *D.T. v. Sumner Cnty. Sch.*, 942 F.3d 324, 347 (6th Cir. 2019).

### 1. Standing

First, I will address the standing argument as to Plaintiffs Saad and Matlock.

"Federal courts are courts of limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  This means the Constitution only grants federal courts the power to decide "cases" and "controversies."  U.S. Const. art. III, § 2, cl. 1.  That is, courts can only decide "actual, ongoing" disputes between parties. *Kentucky v. United States ex rel. Hagel*, 759 F.3d 588, 595 (6th Cir. 2014).  To establish standing, a plaintiff must show "(1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood] that the injury 'will be redressed by a favorable decision.'"  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014) (quoting *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560 (1992)).

As a general matter, inmates who have been released from a facility typically lose standing to challenge the facilities policies.  *See Cardinal v. Metrish*, 564 F.3d 794, 798–99 (6th Cir. 2009) (citing *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996)).  Thus, Plaintiffs Saad and Matlock's claims for injunctive relief are moot as Plaintiff Saad has been released from SMT (ECF No. 24, PageID.240, n.5; ECF No.27-9, PageID.459), and Plaintiff Matlock has been transferred to another facility

(ECF No. 27-2, PageID.399; ECF No. 27-3, PageID.401). *Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Howard v. Heffron*, No. 89-1195, 1989 WL 107732 (6th Cir. Sept. 20, 1989); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991).

Next, I will address the standing argument as to Plaintiffs Moore and Wines. Defendants rely on *City of Los Angeles v. Lyons* to support their position that Plaintiffs Moore and Wines lack standing as the possibility the violation will occur again in 2024 is speculative, and as the events have not unfolded the injuries are in turn speculative. 461 U.S. 95, 103–4, 107–9 (1983). This reliance is misplaced as the facts in *Lyons* are not easily transferrable to the instant action. The distinguishing factor between the two cases is the lack of control. In *Lyons*, the Court held that a plaintiff lacked standing to seek an injunction barring police from using a chokehold without provocation because the plaintiff would face this injury again only if the police once against stopped him for a traffic or other violation and then used the allegedly unconstitutional chokehold. *Id.* at 106–018.

The Supreme Court's rationale behind this is further underscored by their discussion of *O'Shea v. Littleton* in *Lyons*. 414 U.S. 488, 94 S. Ct. 669, 38 L.Ed.2d 674 (1974). The reason the Court did not find a case or controversy existed in *O'Shea* was due to the presence of multiple uncertain factors *and* the necessity of

the plaintiff committing an illegal act which would in turn precipitate the subsequent unconstitutional act. *Lyons,* 461 U.S. at 102 ("But the prospect of future injury rested on the likelihood that plaintiffs will again be arrested for and charged with violations of the criminal law and will again be subjected to bond proceedings, trial, or sentencing before petitioners.") (internal citations omitted) (quoting *O'Shea*, 414 U.S. at 496, 94 S. Ct. at 676). The Court went on to explain that "[i]t was to be assumed that plaintiffs will conduct their activities within the law and so avoid prosecution and conviction as well as exposure to the challenged course of conduct said to be followed by petitioners." 461 U.S. at 103 (citing *O'Shea*, 414 U.S. at 497, 94 S. Ct. at 676).

But, if Plaintiffs' allegations are taken to be true, there is nothing further that Plaintiffs Moore and Wines could do to avoid being placed in the same position during Ramadan this year as they were in 2023. They are both in the same facility (i.e., SMT) where last year they were allegedly unable to receive their medication at the appropriate times during Ramadan, they will be fasting from sunrise to sunset again, and must wait for Defendants to administer their medication to them. There is only one uncertain factor (i.e., whether Defendants will administer their medication before sunrise and/or after sunset), and there is no precedent illegal act which Plaintiffs need commit to cause the unconstitutional action. However, the analysis does not end here.

Although the facts in the instant action are distinguishable from *Lyons*, the underlying premise remains – past exposure to an isolated incident of illegal conduct, in and of itself, does not demonstrate the likelihood that it will occur again. More is required.  Plaintiffs represent that what occurred in 2023 was a one-off instance, and there is no pattern of behavior demonstrating Defendants failed to honor Plaintiffs' medical accommodations during Ramadan over a series of years. Further, Defendants contend that the "unique circumstances present in 2023—high staff turnover—[are no longer] present" and thus it is unlikely that the "same alleged lack of accommodations that occurred in 2023 will inevitably occur here."  (ECF No. 27, PageID.382).  Further, Defendants contend that "[t]here is no basis to conclude that [Plaintiffs] will not be accommodated should they make a request" to receive their medication before sunrise and/or after sunset.  (*Id.* at PageID.384; ECF No. 27-5, PageID.410 ¶ 12).  Thus, it is fair to surmise that Defendants represent in their response that (i) SMT is appropriately staffed, and will remain so through Ramadan, and (ii) Defendants intend to honor the medical accommodation requests of those observing Ramadan.  With these representations in place, it appears Plaintiff's prospective injury is speculative and less than probable. *Evans v. Prisk*, No. 2:17-CV-46, 2017 WL 8790972, at *1 (W.D. Mich. Oct. 24, 2017), report and recommendation adopted, No. 2:17-CV-46, 2017 WL 8790971 (W.D. Mich. Nov. 19, 2017) ("[I]njunctive relief is appropriate only where plaintiff can show a

reasonable expectation or demonstrated probability that he is in immediate danger of sustaining direct future injury as the result of the challenged official conduct.") Further, based on Defendants' representations and in the absence of an established pattern or official policy the Court will assume that Defendants will adhere to Plaintiffs Moore and Wines' requests for medical accommodations once submitted. *Id.* ("A court should assume that, absent an official policy or practice urging unconstitutional behavior, individual government officials will act constitutionally.") (citing *Lyons*, 461 U.S. at 102 and *O'Shea*, 414 U.S. at 495–6)

For these reasons, the Undersigned finds Plaintiffs Moore and Wines lack standing to bring the instant motion for a preliminary injunction.

## 2. Preliminary Injunction

Even if Plaintiffs possessed standing, they would not be entitled to a preliminary injunction. The burden of justifying injunctive relief is considerable and the award of a "preliminary injunction is an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in the limited circumstances which clearly demand it." *Leary*, 228 F.3d at 739 (cleaned up). And while no one factor is controlling, irreparable injury is required to obtain injunctive relief. *Friendship Materials, Inc.*, 679 F.2d at 102–03 (6th Cir. 1982) (citing *Sampson v. Murray*, 415 U.S. 61, 88 (1974)). Further, an injury must be "both

certain and immediate, not speculative or theoretical" to warrant a preliminary injunction. *D.T.,* 942 F.3d at 347.

Defendants argue that Plaintiffs' claimed injuries are speculative and not certain and thus they lack standing. (ECF No. 27, PageID.381).  And their main rationale for why it is unlikely the alleged injury which occurred in 2023 will not occur again this year is because the "unique circumstances present in 2023—high staff turnover—is not present." (*Id.* at PageID.382–83).

Plaintiffs have not alleged facts that suggest the alleged activity is likely to reoccur this year aside from the fact that it occurred in 2023.   Under these circumstances, the possibility that Plaintiffs will be subjected to the same alleged unconstitutional activity is possible but too speculative to warrant granting injunctive relief. *Supra* Section II(D)(1); *Sharp v. Cureton*, 319 F.3d 259, 272 (6th Cir. 2003) ("Injunctive relief should not issue where the claimed irreparable damage is speculative or may never occur."); *see Gumpl v. Seiter*, 687 F. Supp. 1212, 1213 (S.D. Ohio 1988) (speculative threat of injury insufficient to support granting of injunctive relief.).  Further, Defendants' response demonstrates they are aware of the upcoming holy month and have implemented measures to prevent a reoccurrence of what occurred last year.  (ECF No. 27, PageID.382–84).

The state of our law calls for the injury to be imminent in order to warrant granting a preliminary injunction.   *Winter*, 555 U.S. at 22 (A party must

"demonstrate that irreparable injury is likely in the absence of an injunction."); *Michigan Coal of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991) (The injury must be "both certain and immediate, rather than speculative or theoretical."); *Patio Enclosures, Inc. v. Herbst*, 39 F. App'x 964, 969 (6th Cir. 2002) ("To be granted an injunction, the plaintiff must demonstrate, by clear and convincing evidence, actual irreparable harm or the existence of an actual threat of such injury."; *D.T.*, 942 F.3d at 326–27 (The element of irreparable harm is significant as "even the strongest showing on the other three factors cannot 'eliminate the irreparable harm requirement.'"); *Wells Fargo & Co. v. WhenU.com*, 293 F. Supp. 2d 734, 771 (E.D. Mich. 2003) ("A finding of irreparable harm 'the single most important prerequisite that the Court must examine when ruling upon a motion for a preliminary injunction.'").

Based on the lack of imminency, even if Plaintiffs Moore and Wines were found to have standing, they would not be entitled to injunctive relief. If adopted, this recommendation should not preclude the parties from immediately renewing their preliminary injunction if it comes to light that Defendants have failed, for whatever reason, to grant accommodations during Ramadan to those who have submitted a request.

**E. Conclusion**

12

For these reasons, I recommend **DENYING** Plaintiffs' motion for preliminary injunction (ECF No. 24) **WITHOUT PREJUDICE**.

### III.   REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this R&R. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this R&R to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a

concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: January 30, 2024                              S/ PATRICIA T. MORRIS
                                                    Patricia T. Morris
                                                    United States Magistrate Judge