UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN MOORE, II; NAZEM SAAD;
KENNETH MATLOCK; and
CLIFTON WINES;

        *Plaintiffs,*

v.

HEIDI WASHINGTON, MARK
KING, ADRIAN DIRSCHELL,
NOAH NAGY, KATHLEEN
MEYERS, McGINN, MOSES, and
TIMOTHY RYDER,

        *Defendants.*

_____/

Case No. 5:23-cv-11506

Judith E. Levy
United States District Judge

Patricia T. Morris
United States Magistrate Judge

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 19)**

## I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants'

Summary Judgment Motion (ECF No. 19) be **GRANTED**. Adopting this

recommendation will result in dismissing the complaint in its entirety.

## II.    REPORT

### A. Introduction

Plaintiffs are prisoners in the custody of MDOC, incarcerated at the Parnall

Correctional Facility ("SMT"). (ECF No. 19, PageID.135). Plaintiffs allege that

1

around February 2023, they requested accommodations to receive their medication before sunrise or after sunset so as not to violate their fasting requirements during Ramadan, but this agreement was not honored by MDOC officials after Ramadan commenced.  (*Id.* at PageID.135).

Defendants filed a summary judgment motion on October 12, 2023.  (ECF No. 19).   Defendants argue that even if Plaintiffs did not receive the accommodations, their action should be dismissed as the evidence shows that Moore, Matlock and Wines did not exhaust their administrative remedies before filing their complaint.  (ECF No. 19, PageID.136; ECF No. 19-3, PageID.161–62; ECF No. 19–5, PageID.186; ECF No. 19–6, PageID.190).   And while Plaintiff Saad exhausted his administrative remedies, his grievance is inadequate because (i) it does not identify any of the MDOC Defendants as those being grieved, and (ii) he failed to attempt to resolve the issue before filing the grievance.  (*Id.* at PageID.136, 145). Plaintiffs' response, in sum, argues that Defendants' grievance policy is structured in a manner to prevent prisoners from being able to adequately raise their issues and is not intended "to resolve anything."  (ECF No. 21, PageID.197).  Thus, "Plaintiffs fully exhausted their available administrative remedies, which were none."  (*Id.*). The motion is fully brief and ready for adjudication.

## B. Procedural and Factual Background

At the commencement of this action, Plaintiffs were all prisoners in the custody of Michigan Department of Corrections ("MDOC"), incarcerated at the Parnall Correctional Facility ("SMT").[1]  (ECF No. 1, PageID.2, ¶¶ 1–4).  Around late February 2023, Plaintiffs began requesting accommodations to receive their medication before sunrise and/or after sunset so they could fast during the daylight hours for Ramadan.  (*Id.* at PageID.4, ¶¶ 21–22).  On February 25, 2023, Plaintiff Moore requested that Defendants administer his medication after sundown during Ramadan which was set to begin on March 22, 2023.  (*Id.* at PageID.4, ¶ 25).  Defendants confirmed this request would be honored "'as long as [Plaintiff Moore was] signed up as participating in Ramadan . . . .'" (*Id.*).  During the week of March 6, 2023, Plaintiff Matlock submitted a medical accommodation request asking that his medication be administered before sunrise and/or after sunset.  (*Id.* at PageID.5, ¶ 28).  He was assured that this accommodation would be honored.  (*Id.*).  Plaintiffs Saad and Wines received similar assurances.  (*Id.* at ¶ 29).  Despite these representations, none of the Plaintiffs were supplied with their medication during the requested times of before sunrise and/or after sunset.  (*Id.* at PageID.4, ¶ 26).  Instead, Defendants Nagy, McGinn, and Moses sent a  message to prisoners, shortly after the beginning of Ramadan, stating that misconducts would be issued to anyone

---

[1] Plaintiff Saad has since been released from SMT (ECF No. 24, PageID.240, n.5; ECF No.27-9, PageID.459), and Plaintiff Matlock has been transferred to another facility (ECF No. 27-2, PageID.399; ECF No. 27-3, PageID.401).

who failed to appear on the med-line.  (*Id.* at PageID.5, ¶ 30).   Hundreds of misconducts were issued following this.  (*Id.* at PageID.6, ¶¶ 37–39).  Plaintiffs were amongst those who received misconducts.  (*Id.* at PageID.9, ¶ 62).

### 1. Plaintiff Moore's Grievances

When Plaintiff Moore attempted to receive his medication, he was informed that the Health Unit Manager ("HUM") Mark King indicated "there would be no accommodation made for medication during Ramadan."  (ECF No. 1, PageID.6, ¶ 35).   Plaintiff then attempted to resolve the issue by speaking with Defendants Meyers, McGinn, and Moses but to no avail.  (*Id.* at ¶ 36).

Plaintiff Moore contacted the medical department to inform them of his accommodation request for the month of Ramadan, in February 2023, and attempted to resolve the issue with the medical staff on March 20, 2023.  (*Id.* at PageID.49).  On March 20, 2023, he asked one of the nurses if they had been notified of his medical accommodation, and she responded "'no, we are not doing that this year.'"  (*Id.* at PageID.49).   On March 24, 2023, he filed Grievance No. SMT-2023-03-03.4328-B attempting to address the denial of his medical accommodation.  (*Id.* at PageID.7, ¶ 45; *Id.* at PageID.49).   As of the date of the grievance, his medical accommodation had not been honored despite Karin Poland, LPN's assurances.  (*Id.*).  Defendant Timothy Ryder, Grievance Coordinator, rejected his grievance and explained that "grievances must be clear and concise stating the facts of the issues

in detail" which includes a description of who, what, when, where and how it directly affected the grievant.  (*Id.* at PageID.7, at ¶ 46; *Id.* at PageID.49).  Further, at the time the grievance is filed the incident must have occurred and cannot involve something which has not taken place.  (*Id.* at PageID.49).  The decision was upheld at Step II, and Plaintiff appealed the decision to Step III.  (*Id.* at PageID.7,  at ¶ 47; *Id.* at PageID.64).  Moore did not receive a response to his Step III grievance before filing the complaint.  (*Id.*).  Plaintiffs make a passing reference in their Complaint to Administrative Rule 791.1115[2] and state  that failure to issue a decision on a Step

---

[2] While it is not clear from the Complaint, it appears Plaintiffs are referring to Michigan Administrative Code ("MAC") Rule 791.1115.  Rule 791.1115 reads

(1) Pursuant to section 63 of Act No. 306 of the Public Acts of 1969, as amended, being S24.263 of the Michigan Compiled Laws, an interested person may request a declaratory ruling from the department as to the applicability of a statute, rule, or order of the department to an actual state of facts.

(2) The request for declaratory ruling shall be submitted, in writing, to the Director, Department of Corrections, P.O. Box 30003, Lansing, Michigan 48909, and shall contain the following information:

(a) A complete account of facts which actually exist for which the declaratory ruling is sought.

(b) Specific reference to the statute, rule, or order in question.

(3) The director or his or her designee may, but is not required to, issue a declaratory ruling when properly requested.  Lack of response within 30 days of receipt of the request shall be deemed a denial of the request for a declaratory ruling.

Mich. Admin. Code R 791.111d (Dec. 1, 2023).

III appeal in 30 days constitutes a denial.[3]  (*Id.* at ¶ 49).  At the time the motion was fully briefed, a Step III decision had still not been issued.  (ECF No. 21, PageID.198).

On March 31, 2023, Defendant Moore filed Grievance No. SMT-2023-04-03-8028A "regarding Defendant King's deliberate indifference to his medical needs and religious obligations."  (ECF No. 1, PageID.8, ¶ 50; *Id.* at PageID.53).  Defendant Moore explained he sent requests, along with explanations, regarding the necessity to fast during Ramadan and receive his medication after sunset but was informed that per HUM King and Warden Nagy, he would not be accommodated and would have to take his medication during regular medline times.  (*Id.* at PageID.53).  Further, Nurse Ames, Nurse Persons, and Officer Graczyk informed him that during a meeting on March 31, 2023, Warden and HUM King decided they would not provide him with his medication after sunset.  (*Id.*).  The grievance was rejected as duplicative of Grievance No. SMT-2023-03-03.4328-8 and procedurally barred.  (*Id.* at PageID.8, ¶ 51; *Id.* at PageID.53).  The rejection was upheld at Step II, and appealed to Step III.  (*Id.* at PageID.8, ¶ 52).  At the time the motion was fully briefed, a Step III decision had still not been issued.  (ECF No. 21, PageID.198).

### 2.  Plaintiff Wines's Grievance

---

[3] Plaintiffs do not raise this position in response to Defendants' summary judgment motion. However, even if this position was proffered in their response, it would not be persuasive as MDOC Policy 03.02.130 (II) indicates that "[g]enerally, Step III responses will be responded to within 60 business days."  (ECF No. 19-2, PageID.156).

On March 25, 2023, Plaintiff Wines filed Grievance No. SMT-2023-03-03-5928I seeking assistance to receive his medication in accordance with Ramadan after sunset. (ECF No. 1, PageID.9, ¶¶ 60–61). On March 23 and 24 he attempted to resolve the issue by speaking Second Shift Sergeant Quinton, Sergeant Lyons, the medline nurse, and the officer working the medline. (*Id.* at PageID.51). He complained that despite his request to accommodate his Ramadan fast, the aforementioned staff members acted with deliberate indifference to his religious practices, beliefs, and customs. (*Id.* at PageID.51). Plaintiff Wines did not file a Step II or Step III appeal. (ECF No. 19-6, PageID.190; ECF No. 21, PageID.198).

### 3. Plaintiff Matlock's Grievance

On April 2, 2023, Plaintiff Matlock filed Grievance No. SMT-2023-04-03-7628I complaining of experiencing retaliation for attempting to resolve issues regarding his Ramadan medical accommodation request. (ECF No. 1, PageID.8, ¶ 56). He raised his issue with the AM Shift Sergeant, 10-block Unit Officers working both the AM and PM shifts, the Health Care Nurse at the medline window, the medline officer, and the lieutenant. (*Id.* at PageID.60). The grievance was rejected for failure to attempt to resolve the issue with the appropriate staff members before filing. (*Id.* at PageID.8–9, ¶¶ 57–58). Further, prisoners may not use the incident itself to resolve the issue. (*Id.* at PageID.60). "The correct course of action would have been to notify the medical supervisor or the medical unit manager in writing."

(*Id.* at PageID.60).  The rejection was upheld at Step II.  (*Id.* at ¶ 58; *Id.* at PageID.67,

69; ECF No.19-5 at PageID.186).  Plaintiff Matlock did not file a Step III appeal.

(ECF No. 19-5. PageID.186; ECF No. 21, PageID.198).

### 4. Plaintiff Saad's Grievance

On April 2, 2023, Plaintiff Saad filed Grievance No. SMT-2023-04-03-7128I

regarding the failure to honor his medical accommodation request.  (ECF No.1,

PageID.8, ¶ 53).  Plaintiff Saad indicates that on April 2, 2023 and in previous

instances he attempted to resolve the issue by speaking directly to the "AM Shift

Sargeant [sic] [,] working Control Centers Health Care Nurse at Med-Line Window,

and the Med-Line Officer to no adequate resolution.  (ECF No. 19-4, PageID.170).

The grievance goes on to state:

> That I am practicing my religion and honoring a fast during Ramadan consistent with my Islamic faith. Nonetheless, after repeated efforts to resolve this issues, (including dismissal of Class-2 Misconduct tickets), I am still being targeted and written harassment misconduct tickets (back to back) for the failure to take my medicine during my fast even though I have signed off in taking my medication.  As such, I submit that the protracted acts and emissions are a pattern of retaliation and designed to harass, intimidate, and discriminate against me for exercising my faith and practicing my religion, and/or commencing administrative and civil proceedings against the MDOC.  Therefore, **I request an identification of all staff involved in ordering said tickets**, and a STOP ORDER on retaliation, and immediate compliance with my sincerely held religious convictions, practices, and belief systems.

(*Id.*). The grievance was rejected for failure to attempt to resolve the issue with staff before filing. (ECF No. 1, PageID.8, ¶ 53). The rejection was upheld at Step II and Step III. (*Id.* at PageID.8, ¶ 54, 68; ECF No.19, PageID.137).

Shortly after the conclusion of Ramadan, misconducts were no longer issued to prisoners who missed medline. (*Id.* at PageID.6, ¶ 40).

Plaintiffs John Moore, II; Nazem Saad; Kenneth Matlock; and Clifton Wines ("Plaintiffs") filed this prisoner civil rights action against several defendants alleging a failure to provide medical accommodations during the month of Ramadan in the year 2023. (ECF No. 1). Plaintiffs allege violations of their First Amendment right to free exercise, the Religious Land Use and Institutionalized Persons Act, and Mich. Comp. L. § 37.2102. (*Id.* at PageID.9).

Michigan Department of Corrections ("MDOC") Defendants Heidi Washington, Mark King, Adrian Dirschell, Noah Nagy, Kathleen Meyers, McGinn, Moses, and Timothy Ryder filed their summary judgment seeking an order dismissing the unexhausted claims against them, and in turn dismissing this lawsuit in its entirety. (ECF No. 19).

### C. Legal Standard

A court will grant a party's motion for summary judgment when the movant shows that "no genuine dispute as to any material fact" exists. Fed. R. Civ. P. 56(a). In reviewing the motion, the court must view all facts and inferences in the light

most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears "the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986)) (internal quotation marks omitted). In making its determination, a court may consider the plausibility of the movant's evidence. *Matsushita*, 475 U.S. at 587–88. Summary judgment is also proper when the moving party shows that the non-moving party cannot meet its burden of proof. *Celotex*, 477 U.S. at 325.

### D. Analysis

Under the Prison Litigation Reform Act ("PLRA") of 1996, specifically 42 U.S.C. 1997e(a), "[n]o action shall be brought with respect to prison conditions under § 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought. *Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001). Furthermore, "exhaustion" under the PLRA means "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 92 (2006). In *Woodford*, the Supreme Court defined "proper exhaustion" as requiring "compliance with an agency's deadlines and other critical

procedural rules . . . ."  *Woodford*, 548 U.S. at 90.  One reason for creating prisoner

grievance procedures under the PLRA was to create an administrative record for the

court.

> Requiring exhaustion allows prison officials an
> opportunity to resolve disputes concerning the exercise of
> their responsibilities before being haled into court.  This
> has the potential to reduce the number of inmate suits, and
> also to improve the quality of suits that are filed by
> producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007).  In order to properly exhaust administrative

remedies, prisoners must complete the administrative review process in accordance

with the deadlines and other applicable procedural rules.  *Id.* at 218; *Woodford v.

Ngo*, 548 U.S. 81, 90–91 (2006).  "Compliance with prison grievance procedure,

therefore, is all that is required by the PLRA to 'properly exhaust.'"  *Jones*, 549 U.S.

at 218.

MDOC Policy Directive ("P.D.") 03.02.130, effective March 18, 2019,

prescribes the three-step administrative exhaustion process for grievable matters.  At

Step I, a prisoner must "attempt to resolve the issue with staff member involved

within two business days" and, if unsuccessful, must file a grievance within five

business days.  (ECF No. 19-2, PageID.153, ¶ Q).  To be properly exhausted, a

defendant must be named at Step I.  P.D. 03.02.130, ¶ S provides:

> The issues should be stated briefly but concisely.
> Information provided is to be limited to the <u>facts</u> involving
> the issue being grieved (i.e., who, what, when, where,

> why, how).  Dates, times, places, and names of all those
> involved in the issue being grieved are to be included.

(*Id.* at PageID.153) (underscore in original).

If the inmate is dissatisfied with the disposition of the grievance, or does not

receive a response ten days after the due date, he or she may file a Step II grievance

using the appropriate form.  (*Id.* at PageID.155, ¶ DD).  Similarly, if the inmate is

dissatisfied with the Step II response or does not receive a response for ten days after

the response was due, he or she may file a Step III grievance.  (*Id.* at PageID.156, ¶

HH).  Generally, Step III responses will be responded to within 60 business days.

(*Id.* at ¶ II).

### 1.  Plaintiffs[4] Moore, Matlock, and Wines Failed to Exhaust their Administrative Remedies

Defendants contend they are entitled to summary judgment as to Plaintiffs

Moore, Matlock, and Wines for lack of exhaustion.  In support of their motion,

Defendants have presented Step III Grievance Reports listing all grievances which

Plaintiffs filed through the Step III appeal and underlying documentation of those

grievances, if any.

Plaintiff Moore's failure to await a decision on his Step III appeals is

detrimental to his claims.  Plaintiff Moore's July 19, 2023 MDOC Prisoner Step III

---

[4] The use of the term "Plaintiffs" in Section II(D)(1) will refer to only Plaintiffs Moore, Matlock, and Wines.

Grievance Report shows the last grievance appealed to Step III was filed in October 2021.  (ECF No. 19-3, PageID.161).  However, he contends that he filed appeals and at the time of filing his response was awaiting a decision on the Step III appeals.  (ECF No. 21, PageID198).  In regard to Grievance No. SMT-2023-03-03.4328-B, the Step II decision was issued on May 2, 2023.  (ECF No. 1, PageID.64).  Plaintiff Moore could not have appealed this decision earlier than May 2, 2023, and pursuant to MDOC Policy 03.02.130 ¶ II, Step III responses are generally responded to within 60 business days.  (ECF No. 19-2, PageID.156).  Thus, the MDOC had until approximately July 28, 2023 to respond to Plaintiff Moore's Step III appeal.  However, Plaintiff Moore filed his complaint on June 26, 2023 which was almost a month before the Step III response was due to be issued.  In regard to Grievance No. SMT-2023-04-03-8028A, Plaintiff Moore could not have appealed this decision earlier than May 2, 2023 as it was not issued until that date and thus his complaint was filed almost a month before MDOC could have issued its Step III response. *Wirick v. Golladay*, No. 2:12-CV-474, 2014 WL 1028922, at *3 (W.D. Mich. Mar. 14, 2014) ("The administrative process must be complete before a prisoner may file an action in federal court.  In order to complete the administrative process, Plaintiff must wait until he receives a response to his step III grievance, or if he does not receive a response, until 120 days after he has filed his step I grievance.") (internal citations omitted).

Next, I turn to Plaintiffs Matlock and Wines.  Plaintiff Matlock's MDOC Prisoner Step III Grievance Report shows the latest grievance appealed to Step III was filed in January 2023 which is a little over a month before Ramadan began. (ECF No. 19-5, PageID.186).  He does not contend that he filed a Step III appeal for his grievance regarding his 2023 Ramadan medical accommodation request.  (ECF No. 21, PageID198–99).  And Plaintiff Wines' MDOC Prisoner Step III Grievance Report shows that he has not appealed any grievance to Step III from January 1, 2017 to July 19, 2023.  (ECF No. 19-6, PageID.190).  He does not contend that he filed a Step III appeal for his grievance regarding his 2023 Ramadan medical accommodation request.  (ECF No. 21, PageID198).  The MDOC records show that neither Plaintiff Matlock nor Wines exhausted their grievances related to the MDOC's failure to honor their 2023 Ramadan medical accommodation requests.

Tellingly, Plaintiffs have not contested the MDOC's evidence.  Instead, they argue (i) these Plaintiffs were grieving the SMT policy not to accommodate Plaintiffs' religious and medical needs for Ramadan, (ii) Plaintiffs had no available administrative remedies, and (iii) Plaintiffs require additional evidence to demonstrate they had no available remedies.[5]  (ECF No. 21, PageID.201–05).

---

[5] The Undersigned will address Plaintiffs' request for additional evidence as to the grievance policy below.  *See infra* Section D(3).

14

The Undersigned does not find these arguments persuasive.   First, the Complaint contains numerous references to exhaustion of grievances under the PLRA, including attached copies of the grievances relating to Defendants' failure to honor Plaintiffs' respective medical accommodations in 2023.   Yet now Plaintiffs allege their focus was on the policy itself which they attempted to address through the Warden's Forum.   This argument does not hold weight. Their grievances demonstrate they were concerned with the individual denials and incidents they experienced when attempting to obtain their medication during Ramadan, not an alleged general policy refusing to accommodate their religious and medical needs for Ramadan.

Plaintiffs rely on the April 27, 2023 Warden's Forum minutes to support their argument that they were grieving matters of policy but this position is unavailing. The relevant portion of the April 27, 2023 Warden's Forum minutes reads "Inmates were not being accommodated for med-lines during Ramadan as in the past, could this be fixed for next year?"   (ECF No. 1, PageID.34).   Despite Plaintiffs' representation that they were grieving a policy, this is not communicated in the language of the minutes.   There is no reference to a policy at hand, or even a pattern of behavior.   The language itself undercuts the existence of a policy as the minutes acknowledge that in the past inmates were accommodated during Ramadan, and asked that the issue be "fixed for the next year."   (*Id.*).   The minutes do not reflect

an ongoing pattern of annual denials to accommodate inmates during Ramadan, or a request that the alleged "policy" be revoked.  The minutes merely ask that an issue that has arisen involving when inmates observing Ramadan receive their medication be rectified the following year.  Further, the minutes do not include the word "policy" nor do they refer to a document or email that discusses the existence of an SMT policy not to accommodate Plaintiffs' religious and medical needs for Ramadan.  An individual nurse's statement that they are not providing religious accommodations this year is insufficient to demonstrate the existence of a policy. (ECF No. 21, PageID.202).   In sum, merely stating a policy exists does not make it so.

Second, Plaintiffs argue they had no available administrative remedies.[6]  The argument Plaintiffs are actually making is that even if they were to appeal their grievances to Step III it would not result in a favorable resolution.  Thus, there was no reason to continue along the MDOC grievance process as the Step I decisions would most likely be upheld, and the fact that their appeals would be denied, in essence, amounted to the absence of available administrative remedies.   This argument is unpersuasive as the anticipation of an unfavorable grievance ruling does not relieve a plaintiff of their obligation to exhaust their claims before commencing

---

[6] Further, the record shows that in certain instances, even if they believed administrative remedies were not available, they still proceeded with appealing their grievances to Step III in a number of instances.  (*See, e.g.,* ECF No. 19-4, PageID.166; ECF No. 19-5, PageID.186).

an action.  *See Smith v. Winger*, Case No. 2:24-cv-10143, 2024 WL 280516, at *2 (E.D. Mich. Jan. 25, 2024) ("A prisoner's subjective belief that a procedure is ineffective or futile is insufficient to excuse the exhaustion requirement.") (citing *Napier v. Laurel Cty., Ky.,* 636 F.3d 218, 223 (6th Cir. 2011)); *Greene v. Godfrey*, Case No. 2:22-cv-12626, 2023 WL 7137278, at *3 (E.D. Mich. Sept. 27, 2023) ("A prisoner's subjective belief that the grievance process would be ineffective cannot excuse failure to exhaust the prison grievance procedure prior to filing suit.") (citing *Stevens v. Potila*, No. 14-CV-10863, 2015 WL 1245889, at *3 (E.D. Mich. Mar. 18, 2015); *Banks v. Martin*, No.2:20-cv-230, 2022 WL 124174, at *4 (W.D. Mich. Mar. 29, 2022) (Summary judgment granted as Plaintiff had not received a response to his Step II appeal before filing his complaint).  Thus even if Plaintiffs Moore, Matlock, and Wines believed appealing their grievances to Step III or waiting to receive the Step III decision was futile, the requirement to exhaust was not excused.

Last, there is no question of material fact as the evidence shows Plaintiff did not exhaust the administrative remedies through the MDOC grievance process. Thus, Plaintiffs Moore, Matlock, and Wines did not properly exhaust any of the claims raised in this lawsuit.  *See Jones*, 549 U.S. at 218–19; *Woodford*, 548 U.S. at 90–93; *Spencer v. Watkins*, Case No. 1:16-cv-106, 2017 WL 2912960, at *3 (W.D. Mich. June 8, 2017); *Hutchinson v. Tawney*, No. 1:13cv285, 2013 WL 6858451, at

**3–4 (W.D. Mich. Dec. 30, 2013).  Accordingly, Defendants' motion for summary judgment as to Defendants Moore, Matlock and Wines should be granted.

### 2.  Plaintiff Saad Failed to Exhaust the Administrative Remedies

Plaintiff Saad's MDOC Prisoner Step III Grievance Report shows he grieved three separate incidents between early April and late May 2023.  (ECF No. 19-4, PageID.166).  Two of the grievances related to a potential cancer diagnosis but the last grievance, Grievance No. SMT-2023-04-03-7128I, dated April 2, 2023, related to Defendants' failure to honor his requested Ramadan medical accommodation.  (*Id.* at PageID.170).  Plaintiff Saad indicates that on April 2, 2023, and in previous instances, he attempted to resolve the issue by speaking directly to the "AM Shift [Sergeant,] working Control Centers Health Care Nurse at Med-Line Window, and the Med-Line Officer to no adequate resolution.  (*Id.* at PageID.170).  The grievance goes on to state:

> That I am practicing my religion and honoring a fast during Ramadan consistent with my Islamic faith. Nonetheless, after repeated efforts to resolve this issues, (including dismissal of Class-2 Misconduct tickets), I am still being targeted and written harassment misconduct tickets (back to back) for the failure to take my medicine during my fast even though I have signed off in taking my medication.  As such, I submit that the protracted acts and emissions are a pattern of retaliation and designed to harass, intimidate, and discriminate against me for exercising my faith and practicing my religion, and/or commencing administrative and civil proceedings against the MDOC.  Therefore, **I request an identification of all staff involved in ordering said tickets**, and a STOP

18

> ORDER on retaliation, and immediate compliance with
> my sincerely held religious convictions, practices, and
> belief systems.

(*Id.*).  The grievance was rejected by T. Ryder because Plaintiff Saad failed to resolve

his issue with the appropriate staff in the appropriate department prior to filing  a

grievance.  (*Id.*).  The response goes on to explain

> The grievant states he attempted to resolve the issue with
> medical staff during "med line" prior to filing the
> grievance[.] [A prisoner] may NOT use the incident itself
> as their attempt to resolve their issue.  Per the med line
> posted rules there are to be no unnecessary conversations
> with staff.  The correct course of action would have been
> to notify the medical supervisor or the medical unit
> manager in writing.  However They also MAY NOT use
> the grievance process as their "kite system".   This
> grievance is REJECTED at STEP 1 for not attempting to
> resolve the issue appropriately.

(*Id.*).  The rejection was upheld at Steps II and III.  (*Id.* at PageID.167, 169).

MDOC Defendants argue Plaintiff Saad failed to exhaust his claims because

(i) he did not name any of the identified MDOC Defendants in the grievance, and

(ii) the grievance was rejected due to Plaintiff Saad's failure to attempt to resolve

the issue before filing the grievance.  (ECF No.19, PageID.145).

The Sixth Circuit has found that MDOC P.D. 03.02.130(S)'s directive

requires a prisoner to name each person grieved.  (ECF No. 19, PageID.153).

*Sullivan v. Kasajaru*, 316 F. App'x 469, 470 (6th Cir. Mar. 13, 2009).  Failure to do

so amounts to a failure to exhaust and exposes a claim to the possibility of dismissal.

19

*Mitchell v. Klee*, No. 13-13632, 2015 WL 1510441, at *5 (E.D. Mich. Mar. 25, 2015); *Burnett v. Eelbode*, Case No. 18-12471, 2021 WL 1152998, at *5 (E.D. Mich. Mar. 26, 2021) (Levy, J.) ("Because Plaintiff did not name [defendant] at Step I of the grievance, Plaintiff failed to properly exhaust his administrative remedies as to this Defendant.").  Plaintiff Saad has provided no explanation in his response as to why he failed to identify any of the named Defendants in his grievance and thus has provided the Undersigned with no insight or support as to why his claim should not be dismissed for failure to exhaust.  Further, in his response he expressed that he did attempt to resolve the issue with the staff members involved and yet he still failed to identify any of the members by name in his grievance.  (ECF No. 21, PageID.202–03).

Plaintiff Saad ventures to create a question of fact by arguing that he attempted to resolve the issue before filing his grievance despite Defendants' representations in their papers and the Step I grievance response.  (*See id.*).  The Undersigned finds that even if this were true, it does not salvage Plaintiff Saad's claims as he still failed to identify any of the named Defendants.  Thus, I recommend dismissing Plaintiff Saad's claims against the Defendants.  *Horn v. Bay County Sheriff's Dept.*, 2008 WL 3285808, at *8 (E.D. Mich. Aug. 7, 2008) ("Where there is a failure to exhaust, the court will not reach the merits of the complaint; rather, the complaint will be dismissed without prejudice").

### 3.  **Plaintiff's Subpoena Request Should be Denied**

Plaintiffs attempt to salvage their action by requesting a subpoena to obtain evidence that demonstrates they had no available administrative remedies.  But this request appears to come out of left field as their complaint does not hint that they, at any point, were planning to challenge the MDOC administrative process.  The discussions of exhaustion under the PLRA contained within their complaint demonstrate that they were aware of the requirement to exhaust their administrative remedies prior to filing the complaint, and yet their complaint does not contain allegations of an inability to satisfy this requirement.  (ECF No. 1, PageID.7, 36).  Their request for additional discovery appears to be a last-ditch effort to save their complaint from being dismissed due to their failure to properly exhaust their claims.  But even the category of documents, based on their descriptions, they plan to seek would not protect their complaint from dismissal.  Thus, the Undersigned recommends denying this request.

### E.  **Conclusion**

For these reasons, I recommend **GRANTING** Defendants' motion for summary judgment (ECF No. 19) as to all Plaintiffs, and **DISMISSING** the case in its entirety.

### III.   <u>**REVIEW**</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy."  Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this R&R.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this R&R to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address

each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 21, 2024                    S/ PATRICIA T. MORRIS
                                           Patricia T. Morris
                                           United States Magistrate Judge